575 So.2d 946 (1991)
Barbara TOBIN, et vir., Plaintiffs-Appellants,
v.
WAL-MART STORES, INC., Defendant-Appellee.
No. 22193-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1991.
Rehearing Denied March 28, 1991.
*947 Donald R. Miller, Shreveport, for plaintiffs-appellants.
Mayer, Smith & Roberts by Richard G. Barham, Shreveport, for defendant-appellee.
Before MARVIN, NORRIS and BROWN, JJ.
BROWN, Judge.
This is a lawsuit by plaintiffs, Barbara Tobin and her husband, Mike Tobin, to recover damages sustained when Mrs. Tobin was struck by falling merchandise while shopping in a large self-service store. The trial court found in favor of defendant, Wal-Mart Stores, Inc., and plaintiffs appeal. Finding error, we reverse.

ISSUE PRESENTED
On appeal, plaintiffs assign as error the trial court's failure to find that defendant breached its duty to provide customers with a reasonably safe place to shop.

FACTUAL CONTEXT
The essential facts presented at the trial are as follows: At approximately 5:45 p.m. on November 28, 1987, Barbara Tobin was Christmas shopping with her daughter at defendant's Wal-Mart store on Jewella Road in Shreveport. Mrs. Tobin was standing in line at the cash register with her daughter when she remembered to look for a particular item. Mrs. Tobin left her daughter in line and returned to the Housewares Department. Mrs. Tobin testified that she was examining coffee mugs when she was suddenly struck on the head and neck by cartons of glassware. The glassware had been stacked on the shelves directly behind Mrs. Tobin at a height of 7 ½ to 8 feet from the floor.
The accident was promptly reported over the store's pager to defendant's assistant manager, Alton Kiser.[1] Mr. Kiser immediately proceeded to the accident scene and found Mrs. Tobin on the floor in the aisle.
Mr. Kiser had been employed by defendant for approximately five years and stated he was the first person to arrive at the accident scene. Mr. Kiser testified that there was broken glassware and cartons of glassware which had not broken in the aisle next to Mrs. Tobin. Mr. Kiser stated that Mrs. Tobin told him she had a headache and was dizzy. Mrs. Tobin was taken to the office to give a report.
In accordance with store policy, Mr. Kiser prepared an accident report and had photographs taken of the scene. He testified that Mrs. Tobin stated that she was looking at mugs in the aisle when glasses fell off the top shelf hitting her in the head. The photographs and testimony revealed that merchandise had been stacked to a height of approximately 8 feet. Merchandise is stacked on shelves that fit inside a gondola. The gondolas are approximately 5 feet high and extenders (risers) are used to allow greater height when needed. Mr. Kiser commented in his report that the *948 accident apparently happened as indicated by Mrs. Tobin (Exhibit P-1).
Defendant's witnesses included employees of the store who testified that the general policy was to conduct a "zone defense" at various times during the day. This procedure required all employees to inspect merchandise to insure nothing was in a hazardous condition. Zone defenses were normally scheduled at 11:00 a.m., 2:00 p.m., 4:00 p.m. and before closing. Defendant did not present testimony of any employee who was in charge of the Housewares Department on the date of this accident or any employee who conducted "zone defense" or inspections of that department on that day.
Mrs. Tobin's father, Clarence Miller, testified he was called to Wal-Mart by his daughter who reported she had been in an accident. Mr. Miller requested an ambulance. Mr. Miller stated that Kiser told him that glassware had fallen on plaintiff and showed him the scene of the accident. Mr. Miller testified that Kiser said that during the holiday season they had to stock more merchandise than normal in the store and the glassware was in a precarious position. Mr. Kiser denied making this statement.
William Hite, plaintiff's expert and former employee of defendant, testified that the overhead risers are used to hold excess stock during peak seasons and that the decision to use these risers is made by the manager at each individual store. Mr. Hite stated that it was normal operating procedure for store personnel to check displayed items and rearrange them in a safe manner periodically during the day. Mr. Hite and defendant's employees testified that it was the particular department manager's responsibility to maintain the area. After examining the photographs taken at the scene, Mr. Hite believed that poor judgment had been used in stacking the merchandise as items were susceptible to being pushed off from the opposite side of the shelf and were difficult to reach. Mr. Hite concluded that the cartons of glassware were stacked too high with too many cartons on top of each other. Mr. Hite believed the store should have expected customers to rearrange the display when handling the merchandise and that it would be normal for a customer to leave the stack in a precarious position after removing a carton.
Barbara Fuller, the Assistant Manager at Wal-Mart in charge of Housewares, testified that she was not in the store at the time of the accident. However, she reviews all accident reports. Several days after the accident, Mrs. Fuller attempted to recreate the incident. She stacked the merchandise as high as she could and then stood on the gondola attempting to rock the shelf. She stated that the glassware was stable and would not fall. She testified that she did not feel that the merchandise had been displayed in an unstable condition such that it would fall of its own accord.
All of the testimony indicated that the Housewares Department Manager was responsible for the stacking of merchandise to include the inspection and correction of problems. Shirley Douglas testified that she was the manager of the Housewares Department at this Jewella store, but that she did not work on the day of the accident. Ms. Douglas accepted responsibility for the method of stacking utilized at the time of this incident, but had no knowledge of how items were moved about or disturbed on that date.

LIABILITY
The first inquiry is a factual decision to fix the conduct of the defendant which was a substantial factor in bringing about the harm to plaintiffs. Defendant operated a large self-service store and stacked merchandise on shelves up to a height of eight feet. Customers used a narrow aisle between shelves to select items for purchase. It is undisputed that while Mrs. Tobin was shopping at defendant's store, cartons of glassware fell from the top shelf striking her on the head.
The next issue is a legal question of whether the defendant owed a duty to Mrs. Tobin and, if so, whether the duty covered the particular risks encountered. Shoppers must accept certain realities and a storeowner *949 is not an insurer against all possibilities of an accident on his premise. A storeowner must act reasonably in view of the probability of injury to others and owes an affirmative duty to those who use his premises to exercise reasonable care to keep the premises in a safe condition. A customer has a protected interest in expecting premises to be free of hazardous conditions. The storeowner's duty to protect customers encompasses the risk involved in this case. Kimble v. Wal-Mart Stores, Inc., 539 So.2d 1212 (La.1989); Johnson v. Insurance Company of North America, 360 So.2d 818 (La.1978), and Bell v. Bestyet Discount Foods No. 2, 372 So.2d 781 (La. App. 2d Cir.1979).
The final question in the analysis is whether or not, in this case, the defendant breached the duty imposed by law. Plaintiffs assert that strict liability under LSA-C.C. Art. 2317 and 2322 should be applied. LSA-C.C. Art. 2322 refers to damage occasioned by the ruin of a building, or, as stated by this court, strict liability applies where there is a defect in the premises as opposed to a dangerous condition on the premises. Waters v. McDaniel Recreation Center, 521 So.2d 788 (La.App. 2d Cir. 1988), writ denied, 524 So.2d 520 (La. 1988).
In this case the condition existed on the premises and liability is under LSA-C.C. Art. 2315 and 2316. The trial court made a factual finding that due to conflicting evidence, plaintiffs failed to carry their burden of proof that the stacking created an unreasonably dangerous condition. The trial court determined that it was reasonable to conclude that Mrs. Tobin "suffered one of her dizzy spells or blackout spells and fell against the head high bottom of the stacked glasses which caused them to fall ... (sic)".[2]
It is well-settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989) and White v. McCoy, 552 So.2d 649 (La.App. 2d Cir. 1989). After reviewing the testimony and the evidence, we find that the trial court was clearly wrong in its factual determination.
The evidence as a whole proves the most reasonable cause of the cartons of glassware to fall was the manner in which they were stacked. Plaintiffs are not required to pinpoint the exact reason why the glassware fell. The totality of the circumstances created an inference of causal negligence by defendant which was not rebutted. Bell v. Bestyet Discount Foods No. 2, supra.
Mrs. Tobin testified that she did nothing to cause the glassware to fall and was the only witness to the occurrence. Defendant's assistant manager was immediately notified and found her on the floor with the glassware. The assistant manager conducted an immediate investigation concluding that the "indications are that it happened as she stated". No employee actually working in this department on the day of the accident testified for defendant. The failure to present testimony from these employees was significant considering Mrs. Douglas' testimony that the risers contained "overstock" that was constantly being moved by both customers and store personnel. The assistant manager for this department, Mrs. Fuller, as well as the department manager, Mrs. Douglas, was not on duty on the day of this accident. It could be argued that the store was not properly manned during this holiday season.
Mrs. Tobin had no way of determining exactly what happened, but the most plausible explanation is that boxes of glassware were precariously stacked. This inference was not overcome by defendant's evidence and the trial court's finding that Mrs. Tobin may have blacked out and fallen into the shelving is speculative and clearly unsupported.

DAMAGES
Having found that the trial court erred in not finding liability, this court is empowered *950 to award damages when sufficient proof is available in the record. Bufkin v. Mid-American Indemnity Company, 528 So.2d 589 (La.App. 2d Cir.1988) and Daugherty v. Casualty Reciprocal Exchange Insurance, 522 So.2d 1323 (La.App. 2d Cir. 1988).
A claimant's burden is to prove by a preponderance of the evidence a causal connection between the accident and the injuries. A victim is entitled to compensation for an aggravation of a pre-existing condition or injury. A causal link between the negligence and the degree of aggravation must be established. The primary considerations in the assessment of damages are the severity and duration of the injured party's pain and suffering. McGrew v. Jordan, 516 So.2d 1246 (La.App. 2nd Cir. 1987); Doucet v. B & R Petroleum Services, Inc., 546 So.2d 626 (La.App. 3d Cir. 1989), and Miller v. Winn-Dixie Stores, Inc., 527 So.2d 989 (La.App. 3d Cir.1988), writ denied, 531 So.2d 763 (La.1988).
Mrs. Tobin testified that this incident aggravated her condition from a prior accident that occurred in 1984. In particular, since 1984 Mrs. Tobin had periodically suffered dizziness, headaches and neck pain. She had almost recovered from the first accident and was functioning normally except for severe headaches approximately once a week. The medical evidence indicated that Mrs. Tobin's symptoms following this injury were similar to her complaints following the prior accident in 1984. Mrs. Tobin did not display any objective signs of trauma upon examination in the emergency room immediately following this accident.
Both treating physicians were of the opinion that Mrs. Tobin was not asymptomatic from the prior injury and that the second accident was definitely an aggravation of the original injury. Upon reviewing the evidence, we find that Mrs. Tobin sustained an aggravation of a pre-existing condition. Dr. Hernandez treated Mrs. Tobin from December 1987 until April 1988 and diagnosed a musculoligamentous strain of the cervical spine. Dr. McBeath first saw Mrs. Tobin in August 1988 for a second opinion and concluded she suffered from post-concussion syndrome and post-traumatic headache syndrome. Dr. McBeath saw Mrs. Tobin for treatment three times from August 1988 until March 1989. This condition lasted about 15 months until Mrs. Tobin returned to her pre-accident self. We find that an award of $7,500 is appropriate.
Mrs. Tobin is also entitled to recover her medical expenses in the amount of $775.44. However, like any other element of damages, future medical expenses must be established with some degree of certainty. Awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and as to their probable cost. Lloyd v. TG & Y Stores Company, 556 So.2d 629 (La.App. 2d Cir. 1990) and Hunt v. Board of Supervisors of Louisiana State University, 522 So.2d 1144 (La.App. 2d Cir.1988).
Upon reviewing the record, we can find no evidence to support an award of future medical expenses. While Dr. McBeath testified that she would continue to monitor plaintiff's condition indefinitely as needed, or approximately every 2 months, there was no evidence that these follow-up visits were a result of the second injury as opposed to treatment for the original injury. Further, no testimony was presented detailing the probable cost of these future medical expenses with sufficient certainty.
Plaintiff, Mike Tobin, has requested an award of damages for loss of consortium as the result of his wife's injury. Loss of consortium includes such elements as loss of service, loss of love and affection, loss of society and companionship, loss of sexual relations, loss of support and loss of felicity or overall contentment and happiness. Vaccaro v. Sports & Imports, Inc., 539 So.2d 989 (La.App. 4th Cir.1989), writs denied, 541 So.2d 1391 (La.1989) and 541 So.2d 1392 (La.1989) and Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5th Cir.1988), writ denied, 530 So.2d 569 (La. 1988). Upon reviewing the testimony we find that the evidence is insufficient to *951 establish a loss of consortium as plaintiff's activities were already somewhat impaired by the previous accident. Additionally, Mr. Tobin was unable to testify at trial due to his seizure disorder and thus there is no evidence as to the impact of plaintiff's injuries upon his relationship with her.

DECREE
For these reasons, the judgment of the trial court is REVERSED and judgment is hereby rendered in favor of plaintiff, Barbara Tobin, and against defendant, Wal-Mart Stores, Inc., in the sum of $8,275.44 with legal interest from date of judicial demand. Costs are assessed to defendant.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, VICTORY and BROWN, JJ.
Rehearing denied.
NOTES
[1] The record does not show who made the call to Mr. Kiser and defendant presented no one, except Mr. Kiser, who was actually in the store at the time of the accident.
[2] Mrs. Tobin was injured in a fall in 1984 and suffered periodic headaches, dizziness, and black-outs. Dr. McBeath concluded Mrs. Tobin suffered from post-concussion syndrome; Dr. Hernandez last knew of any complaints of black-outs in April 1986.