This is a premises liability case. The plaintiff, Elizabeth Thompson, filed an action in Clarke County, on August 15, 1994, against Wal-Mart Stores, Inc., and Sheldon Day, the manager of Wal-Mart's store in Thomasville. The complaint alleged two causes of action: (1) negligence and (2) wantonness. The defendants answered, denying Mrs. Thompson's allegations. Mrs. Thompson later amended her complaint to add another negligence claim, and the defendants filed an amended answer. On April 3, 1997, the defendants moved for a motion for summary judgment on Mrs. Thompson's wantonness claim. On April 29, 1997, Mrs. Thompson moved for an extension of time to respond to the summary judgment motion. The trial court denied the motion for summary judgment.
The case was tried to a jury on August 11, 1997. On the question of liability, Mrs. Thompson presented four witnesses: herself, John Leyenberger (by deposition), Sheldon Day (by deposition), and Allene Dannelly. On the question of damages, she presented five witnesses: Neff Weber, Dr. Roy Larrimore (by deposition), Dr. William Bridges (by deposition), Dr. Robert Allen (by deposition), and her husband. Mrs. Thompson dismissed Sheldon Day as a defendant, with prejudice. The remaining defendant, Wal-Mart, filed motions for a judgment as a matter of law on the wantonness claim and on the issues of mental-anguish damage and punitive damages. The trial court denied the motions as to the wantonness claim and the punitive-damages issue and reserved ruling on the mental-anguish issue. Wal-Mart presented three witnesses: John Leyenberger, Frances Agee, and Sheldon Day. Then it renewed its specific motions for a judgment as a matter of law, which the trial court denied. Wal-Mart admitted liability on the negligence claims. The jury returned a plaintiff's verdict, awarding $100,000 in compensatory damages on the negligence claims and $175,000 in punitive damages on the wantonness claim. Wal-Mart renewed its motions for a judgment as a matter of law and moved for a new trial. Without a hearing or entering a detailed order, the trial court denied the motions. The trial court entered a judgment on the verdict. Wal-Mart appealed on December 19, 1997.
We reverse the trial court's order denying Wal-Mart's motion for a judgment as a matter of law on the wantonness claim and on that claim we render a judgment for Wal-Mart. We affirm that portion of the judgment awarding $100,000 on the negligence claims.
 I. Facts
On the morning of June 26, 1993, Mrs. Thompson and her friend Allene Dannelly went shopping for curtains at the Wal-Mart store in Thomasville. As she was bending over to look at the curtains, a small cubical footlocker, approximately 1 1/2- to 2-feet square fell from the "riser," the top shelf, where excess merchandise was kept.
A Wal-Mart employee, Francis Agee, was in the opposite aisle assisting another customer at the time of the accident. Ms. Agee had taken a piece of luggage down from the riser and had replaced it after the customer finished looking at it. Mrs. Thompson admitted that she does not know what caused the footlocker to fall. Neither could an eyewitness determine what caused the locker to fall from the riser.
Mrs. Thompson was taken to the hospital after the incident. She was X-rayed and was told there was nothing wrong. She received stitches to heal the cut and two regular over- the-counter medicine tablets for pain. Mrs. Thompson testified that she had a good night's sleep on the night of the accident. The following Monday she saw a general practitioner, Dr. Roy Larrimore. At the time, she was complaining of headaches. He examined her again on two separate occasions. After each examination, he decided it was not necessary to give her any more medication, nor to give her any treatment. She later decided to see a neurosurgeon, still complaining of headaches. The neurosurgeon, Dr. William Bridges, performed a CAT scan, which showed nothing unusual. From September 1993 until April 1994, Mrs. *Page 653 
Thompson did not see any doctor about the injury or any effect of the injury she claimed to have sustained at the Wal-Mart store. In April 1994, after having seen several doctors, who ran a variety of tests, with each doctor summarily concluding that she had recovered, Mrs. Thompson chose to see a neurologist, Dr. Robert Allen. On April 6, 1994, Dr. Allen gave a diagnosis of some nerve damage, for which he said he could treat her in at least eight visits. Mrs. Thompson visited Dr. Allen 15 times, and she claimed to feel relief from these treatments. The treatment involved injections of an anesthetic agent and a numbing medicine plus a steroid medicine of the cortisone type. She testified that she was never treated for depression, never had any anxiety or nervousness, and never suffered mental anguish as a result of this incident. Mrs. Thompson also testified that she had had headaches before the accident at the Wal-Mart store.
Before this accident, Wal-Mart had written safety policies concerning the placement of merchandise, including the placement of merchandise on risers. These policies were developed at the corporate level. The management of each individual store then instructed the store employees as to the safety policies. Wal-Mart's corporate headquarters issued at least 75 percent of the overall merchandise-placement policies. The individual stores have the authority to determine the layout of what Wal-Mart calls "flex" and "seasonal" merchandise. The footlocker in question was a back-to-school seasonal item. Additionally, Wal-Mart used fencing, three-inch high pieces of rectangular metal, on certain shelves, to hold in certain loose merchandise, such as `Nerf' toys. The corporate policy prohibited the use of fencing on risers because it was ineffective for flat stable items stored on risers. Further, each store has a risk-control team. On a corporate level, Wal-Mart employs a team of 21 full-time safety employees who regularly travel to Wal-Mart stores for inspections to ensure that the Wal-Mart safety policies are being implemented.
Furthermore, Wal-Mart trained its employees to make sure the stacked products were stable and straight. The products were not to be within 18 inches of any sprinkler heads. In order to ensure stability, Wal-Mart also required that heavier items be in lower-shelf areas and it implemented a "bump test."
The Thomasville store maintained incident reports and did not provide these reports to corporate headquarters. According to the testimony of Sheldon Day, the manager of the Thomasville store at the time of the incident, Wal-Mart was aware of accidents that had been caused by falling merchandise. However, he added: "[T]hat's why we took action through training of our associates on the stable stacking of merchandise on risers." Wal-Mart's corporate risk-prevention department was not aware in 1992 and 1993 of any significant safety problems at the Thomasville store. Nonetheless, in Wal-Mart's answers to the plaintiff's interrogatories, it stated that 167 accidents involving falling merchandise had occurred in Wal-Mart stores in Alabama during the five years preceding Mrs. Thompson's accident. This figure represents accidents in Wal-Mart stores across the entire state; this Court has held that on questions of premises liability accidents at other locations are irrelevant. Burlington Northern.R.R. v. Whitt, 575 So.2d 1011, 1019 (Ala. 1990).
The record clearly reflected that Wal-Mart had been aware of accidents involving falling merchandise, but that, because of this awareness, it had instituted many thorough safety procedures in order to ensure the safety of its customers. The evidence indicates that Wal-Mart implemented sufficient guidelines. The plaintiff asserts that these guidelines indicate awareness on Wal-Mart's part. However, using vigorous safety policies, like these Wal-Mart had in place, to support a claim of wantonness is equivalent to punishing someone for taking precautions to avoid causing injury. The standard required to support a wantonness claim is a high one and should remain such.
 Il. Issues
Wal-Mart raises three issues on appeal: (1) Whether the trial court erred in denying Wal-Mart's motions for summary judgment and its motion for a judgment as a matter of law on Mrs. Thompson's wantonness claim; *Page 654 
(2) whether the trial court erred in denying Wal-Mart's motion for a judgment as a matter of law on Mrs. Thompson's claim for mental-anguish damages, a motion based on a claim that she failed to present substantial evidence in support of that claim; and (3) whether the trial court erred in precluding Wal-Mart from presenting, as rebuttal evidence, an estimate of the total number of customers entering Wal-Mart's stores in Alabama in the three years before to Mrs. Thompson's injury.
 III. Wantonness
Wal-Mart argues that the trial court erred in denying its motions for a summary judgment and later for a judgment as a matter of law on the wantonness claim. Mrs. Thompson asserts that Wal-Mart wantonly caused the footlocker to fall on her and wantonly failed to prevent it from falling on her.
This court has declined to adopt an ironclad rule that an erroneous denial of a motion for summary judgment is always rendered moot by a subsequent verdict in favor of the nonmovant, lest we encourage a party to change "testimony or other evidence based on experience gained during the proceedings on the motion for summary judgment." Superskate v. Nolen, 641 So.2d 231, 233-34
(Ala. 1994). Because we are not here confronted with a situation involving a change of testimony, we will not consider whether the defendant was in fact entitled to a summary judgment, but will consider whether at trial it was entitled to a judgment as a matter of law.
In reviewing the denial of a motion for a judgment as a matter of law, we apply this standard: "A judgment as a matter of law is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ." Locklear DodgeCity, Inc. v. Kimbrell, 703 So.2d 303 (Ala. 1997). Further, this Court, as the reviewing court, must view all evidence in the light most favorable to the nonmoving party. Bussey v. John DeereCo., 531 So.2d 860 (Ala. 1988).
On her wantonness claim, Mrs. Thompson had to present evidence indicating that Wal-Mart knew that a practice it was engaging in would likely or probably result in the injury allegedly suffered by Mrs. Thompson. "Wantonness" is statutorily defined as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975, § 6-11-20
(b)(3). This Court has accepted the following definition of wantonness: "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." Bozeman v. Central Bank of the South,646 So.2d 601 (Ala. 1994). Accordingly, to prove "wantonness," one need not prove intentional conduct; however, proof of wantonness still requires evidence of a reckless or consciousdisregard of the rights and safety of others. This Court recognizes a distinction between negligence and wantonness.
Mrs. Thompson did not present sufficient evidence to support a finding of wantonness. Although Wal-Mart's Thomasville store had received two or three reports of falling merchandise before this accident, the management of that store had no information from which they could have known that an accident of the kind which occurred in this case was likely to happen. The evidence was not sufficient to support a finding that Wal-Mart was reckless in storing footlockers on the riser s. Wal-Mart had both corporate and local safety teams, safety manuals, and safety reinforcement mechanisms. Although Wal-Mart's action in storing this merchandise could be considered negligent, its behavior was not such as to warrant a verdict of wantonness.
Wal-Mart argues that Mrs. Thompson failed to present any evidence showing that Wal-Mart committed willful or wanton conduct and the trial court therefore should have granted its motion for a judgment as a matter of law as to the wantonness claim. There was no evidence to indicate that any Wal-Mart employee "wantonly" caused the footlocker to fall. Further, there was no evidence to indicate that Wal-Mart "wantonly" failed to prevent Mrs. Thompson's injury. There was evidence indicating that Wal-Mart had enforced a plethora of safety measures in *Page 655 
order to protect employees and customers. Construing the evidence in the light most favorable to Mrs. Thompson, we cannot classify Wal-Mart's behavior as wanton. Wal-Mart asks us to reverse the trial court's denial of its motion for a judgment as a matter of law on the wantonness claim. Wal-Mart admits it was negligent. This Court must continue to uphold the distinction between negligence and wantonness. Therefore, because the trial court should have granted Wal-Mart's motion for a judgment as a matter of law as to the wantonness claim, we reverse that portion of the judgment awarding punitive damages on the jury's finding of wantonness; and as to the wantonness claim, we render a judgment for the defendant Wal-Mart.
 IV. Mental Anguish
Wal-Mart asks this court to reverse the judgment on the negligence claim insofar as it awarded damages based on the plaintiff's claims of mental anguish/emotional distress. Wal-Mart claims it was entitled to a judgment as a matter of law on any claims for damages based on mental anguish/emotional distress.
This Court has accepted this definition of "mental anguish" from Black's Law Dictionary (6th ed. 1990):
 "When connected with a physical injury, this term includes both the resultant mental sensation of pain and also the accompanying feelings of distress, fright, and anxiety. As an element of damages it implies a relatively high degree of mental pain and distress; it is more than mere disappointment, anger, worry, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and or public humiliation . . as a ground for compensable damages or an element of damages, it includes the mental suffering resulting from the excitation of the more poignant and painful emotions, such as grief, severe disappointment, indignation, wounded pride, shame. etc.'
Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1306
(Ala. 1991).
Mrs. Thompson presented substantial evidence indicating she had suffered mental anguish as a result of the accident. As theBlack's Law Dictionary definition states, mental anguish is more than mere worry or embarrassment. It is more than lost sleep. The evidence showed that Mrs. Thompson suffered a serious and painful physical injury when she was hit in the head by a footlocker that fell several feet off a tall shelf, and the evidence indicated this injury was caused by negligent conduct of the defendant. This injury required her to see various doctors on several occasions, who treated her for physical symptoms, such as head and neck pain. Viewing the evidence in the light most favorable to the plaintiff, as we are required to do, we conclude that it was sufficient for the jury to award damages to compensate the plaintiff for the mental or emotional pain and suffering that attended her injury. The trial court did not err in denying Wal-Mart's motion for a judgment a matter of law as to the claim for mental-anguish damages.
 V. Evidentiary Rulings
Wal-Mart argues that the trial court abused its discretion by excluding Wal-Mart's evidence of the number of customers who had entered Alabama Wal-Mart stores, including the Thomasville store, and the number of transactions that had occurred at those stores. The standard applicable to a review of a trial court's rulings on the admission of evidence is determined by two fundamental principles. The first grants trial judges wide discretion to exclude or to admit evidence. "The test is that the evidence must . . . shed light on the main inquiry, and not withdraw attention from the main inquiry." Atkins v. Lee, 603 So.2d 937
(Ala. 1992) (citing Ryan v. Acuff, 435 So.2d 1244 (Ala. 1983)). The second principle "is that a judgment cannot be reversed on appeal for an error unless . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties." Atkins, 603 So.2d at 941. Based on these principles, we conclude that the trial judge's evidentiary rulings do not constitute reversible error. *Page 656 
 VI. Conclusion
We reverse the trial court's judgment insofar as it awarded punitive damages on the jury's finding of wantonness, and we render a judgment for Wal-Mart on the wantonness claim. We affirm the judgment insofar as it awarded damages based on the negligence claims.
AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
MADDOX, SHORES, HOUSTON, KENNEDY, COOK, and SEE, JJ., concur.
LYONS, J., recuses himself.