788 So.2d 116 (2000)
WAL-MART STORES, INC.
v.
Frazier L. MANNING.
1981621.
Supreme Court of Alabama.
May 26, 2000.
Rehearing Denied January 12, 2001.
*117 Matthew C. McDonald, Michael M. Shipper, and Kirkland E. Reid of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for appellant.
Patrick O'Neal Miller and W. Banks Herndon of Loftin, Herndon, Loftin & Miller, Phenix City, for appellee.
SEE, Justice.
Frazier Manning sued Wal-Mart Stores, Inc. ("Wal-Mart"), alleging that Wal-Mart had negligently or wantonly caused several boxes of VCRs to fall from a riser and to injure him. The jury returned a verdict in favor of Manning. The circuit court entered a judgment on that verdict. Because we hold that the circuit court erred in denying Wal-Mart's motion for a judgment as a matter of law, we reverse and remand.

I.
In June 1995, Frazier Manning entered a Wal-Mart retail store in Columbus, Georgia, intending to purchase a VCR and a television set. While he was in the electronics department looking at a VCR, several boxes containing VCRs fell from a riser on which they had been stacked and struck Manning on his head and right shoulder. Immediately after the incident, Christie Veach, a Wal-Mart assistant manager, approached Manning. Veach asked Manning what had happened and whether he was hurt. Manning did not know what had caused the accident, but indicated that he did not believe he had suffered any serious injuries. Veach brought Manning a chair, and for about 40 minutes, he rested in it. Manning then went to the clothing department, purchased a shirt for his grandson, and left the Wal-Mart store.
The following Monday, Manning visited Dr. K.G. Edwards, a chiropractor, seeking treatment for pain in his neck and shoulder. Eventually, Dr. Edwards referred Manning to Dr. Fred Flandry for treatment of his shoulder and to Dr. Kenyon Rainer, a neurologist, for treatment of his neck. Dr. Rainer ordered an MRI test performed on Manning's neck. The MRI indicated that Manning had a herniated disk at the C-6/7 level. Dr. Flandry referred Manning to Dr. Kenneth Burkus. In April 1998, Dr. Burkus performed surgical fusion on Manning's neck.
In August 1996, Manning sued Wal-Mart in the Russell County, Alabama, Circuit Court, seeking $45,000 in damages for the injuries he claims to have suffered from being struck by the boxes containing the VCRs. Manning initially asserted only a simple negligence claim. He later amended his complaint, adding a claim of wantonness and demanding punitive damages. Manning presented no evidence at trial to indicate what caused the VCRs to fall from the riser and strike him. Rather, his evidence indicated only that the VCRs had fallen off the riser and that other objects had fallen off risers in the store over the past several years. The jury returned a verdict in favor of Manning, awarding him $300,000 in compensatory damages and $1 million in punitive damages. After applying Georgia's statutory cap on punitive damages, the trial court entered a judgment in favor of Manning in the amount of $300,000 in compensatory damages and $250,000 in punitive damages. Wal-Mart appealed.

II.
Wal-Mart argues, among other things, that it was entitled to a judgment as a matter of law because, it says, Manning failed to present substantial evidence to support his claim that negligence or wantonness on the part of Wal-Mart proximately caused his injuries.
*118 "A judgment as a matter of law is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ and the moving party is entitled to a judgment as a matter of law." Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303, 304 (Ala.1997) (internal quotation marks and alterations omitted). In reviewing the denial of a motion for a JML, this Court must view all evidence in the light most favorable to the nonmoving party. See Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala.1988).
The parties agree that Alabama's choice-of-law doctrine requires that the substantive rights of an injured party be determined according to the law of the state where the injury occurred. See Etheredge v. Genie Indus., Inc., 632 So.2d 1324 (Ala.1994). Because Manning's injuries occurred in Georgia, we must apply the law of Georgia to the substantive issues in this case. See id. Of course, Alabama law still governs questions deemed to be "procedural" in nature. See id.
Georgia law provides:
"The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner ... and not known to the person injured that a recovery is permitted.... The dangerous instrumentality must have been known to the proprietor and unknown to the invitee before the invitee can recover."
Cook v. Home Depot, Inc., 214 Ga.App. 133, 134, 447 S.E.2d 35, 36 (1994) (citations, internal quotation marks, and emphasis omitted).
Manning, however, made no showing that the VCRs were stacked in a dangerous manner and that Wal-Mart was actually aware that they were stacked in a dangerous manner. Even if Wal-Mart did not have actual notice that the VCRs were stacked in a dangerous manner, it could still be liable if it had constructive notice of a dangerous condition. See id. However, "`there was no evidence that there was any employee of [the premises owner] in the immediate vicinity who could easily have noticed [the dangerous condition].'" Id. (quoting Madaris v. Piggly Wiggly Southern, Inc., 205 Ga.App. 405, 406-07, 422 S.E.2d 273 (1992)). Although Manning could have established constructive knowledge by showing that Wal-Mart failed to exercise reasonable care in inspecting the premises, Manning presented no evidence to establish the length of time that the allegedly dangerous condition had existed. See id.
Manning argues that Wal-Mart had constructive notice of the condition because, he says, it knew that other items had previously fallen from risers in the store. Specifically, Manning presented evidence indicating that 11 Wal-Mart customers had been injured by falling merchandise within the two years before his accident. However, the only similarity between the prior accidents and the accident in this case is that the merchandise had been stacked on risers. Nothing in the record indicates that it is inherently dangerous to stack merchandise on risers or that the merchandise that had previously fallen had been stacked on the risers in a manner similar to that in which the boxes containing VCRs had been stacked.[1] Accordingly, *119 Manning failed to establish that the facts regarding the prior incidents of falling merchandise were sufficiently similar to the facts of this case to provide Wal-Mart with constructive notice that the boxes containing VCRs in this case were stacked in a dangerous manner. See id.

III.
Because Manning failed to establish that Wal-Mart had either actual or constructive notice that the boxes containing VCRs were stacked in a dangerous manner, the circuit court erred in denying Wal-Mart's motion for a judgment as a matter of law on Manning's negligence and wantonness claims. Accordingly, we reverse the circuit court's judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, HOUSTON, LYONS, and BROWN, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
HOOPER, C.J., and COOK and ENGLAND, JJ., dissent.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur insofar as the majority holds that the plaintiff did not prove wantonness. I dissent insofar as the majority holds that the plaintiff did not prove negligence. (See Justice Cook's dissent.) I also dissent from the reversal of the judgment for compensatory damages. In this case the jury could not have found wantonness without also finding negligence, which the facts and the law support. We should reverse only that part of the judgment awarding punitive damages.
HOOPER, Chief Justice (dissenting).
I respectfully dissent. I would not require the plaintiff, Frazier Manning, to prove that the boxes fell because of negligence. First, considering the circumstances of the case, it is unlikely that the plaintiff could prove that. Once the boxes have fallen, how would Manning prove that they were stacked negligently? The only way I know is for an employee of Wal-Mart, if you could find the employee who stacked these particular boxes, to come forward and say, "We stacked the boxes so that they would fall." Any employee who admitted to stacking these particular boxes would probably testify that he stacked the boxes as he normally stacked boxes. How does a plaintiff prove negligence with that kind of testimony?
Second, I consider my dissent in Kmart Corp. v. Bassett, 769 So.2d 282 (Ala.2000), to apply to this case also. As I said in that case, "[the defendant premises owner] was the only entity in control of the instrument." Therefore, the doctrine of res ipsa loquitur should have been held applicable. Wal-Mart was in sole control of the boxes and the manner in which they were stacked. Wal-Mart had knowledge superior to that of Manning on the question whether the stacked boxes were a dangerous instrumentality. Unless the law requires some accountability on the part of entities such as Wal-Mart in this case and *120 Kmart in the Bassett case, what incentive do they have to maintain safe premises, whether by using a system of stacking boxes that avoids injuries to people like Frazier Manning or by keeping automatic doors in good condition so as to avoid injuries to people like Christine Bassett?
COOK, Justice (dissenting).
The majority reverses a judgment entered on a jury verdict in favor of Frazier Manning, who was injured while shopping in the "Airport Thruway Wal-Mart" store in Columbus, Georgia, by merchandise falling from the overhead "riser" on which it had been stacked.[2] The majority concludes that "Manning failed to establish that Wal-Mart had either actual or constructive notice that the boxes containing VCRs were stacked in a dangerous manner." 788 So.2d at 119. I disagree with this conclusion.
Manning claimed that personnel at the Airport Thruway Wal-Mart store negligently or wantonly stacked its merchandise, and that he was injured as a result. Under Georgia law, Wal-Mart could be liable if it knew, or, in the exercise of reasonable care, should have known, that its merchandise was stacked in a "defective manner." Sams v. Wal-Mart Stores, Inc., 228 Ga.App. 314, 315, 491 S.E.2d 517, 518 (1997). I believe Manning presented evidence from which the jury could reasonably infer that management personnel at the Airport Thruway Wal-Mart store knew that its merchandise was routinely being stacked in an improper and dangerous manner.
For example, Manning presented evidence indicating that within two years and three days of the incident in which he was injured, at least 11 other persons shopping in the Airport Thruway Wal-Mart store had been struck by merchandise falling from risers. This evidence is particularly significant when considered in connection with the evidence that was produced in Ex parte Wal-Mart Stores, Inc., 682 So.2d 65 (Ala.1996) ("Thompson I"), and Wal-Mart Stores, Inc. v. Thompson, 726 So.2d 651 (Ala.1998) ("Thompson II").
The litigation in Thompson I and Thompson II arose out of an incident in which Elizabeth Thompson was struck in the head by a "footlocker" that fell from an overhead riser while she was shopping at the Wal-Mart store in Thomasville, Alabama. 726 So.2d at 652. In Thompson I, this Court held that Thompson was entitled to "all accident and incident reports from all [86] Wal-Mart stores in Alabama" for the five years preceding her injury. 682 So.2d at 66. As a result of this Court's holding, Thompson discovered that "167 accidents involving falling merchandise had occurred in Wal-Mart stores in Alabama during the five years preceding [her] accident." 726 So.2d at 653. She also discovered that the Thomasville Wal-Mart store had had "two or three reports of falling merchandise before [her] accident." Id. at 654.
Thompson II involved Wal-Mart's appeal from a judgment entered on a jury verdict in favor of Thompson, awarding her "$100,000 in compensatory damages on [her] negligence claims and $175,000 in punitive damages on [her] wantonness *121 claim." Id. at 652. This Court concluded that the evidence supported the verdict based on negligence, but not based on wantonness. Id. at 656.
In contrast to the evidence presented in Thompson II, the evidence in this case reveals that merchandise falls from risers at the Airport Thruway Wal-Mart store with a startlingly high frequency. The graphic reality of this fact may be illustrated mathematically. Specifically, the average annual rate of riser-merchandise incidents in Alabama from June 1988 to June 1993 was .388 per store [167 state-wide incidents ÷ 86 (the number of Wal-Mart stores in Alabama) = 1.94 ÷ 5 years =.388]. Thus, the average annual incident rate at the Thomasville Wal-Mart store, namely, two or three incidents for the relevant period, was approximately twice the overall statewide average [3 incidents ÷ 5 years = .600 average annual incidents]. At the Airport Thruway Wal-Mart store, however, the average annual incident rate was a startling 5.50 [11 incidents ÷ 2 years = 5.50], more than 14 times the average annual state-wide incident rate in Alabama.
In Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946, 951 (La.App.), writ denied, 580 So.2d 923 (La.1991), the Court of Appeal of Louisiana reversed a trial-court judgment in favor of Wal-Mart and rendered a judgment in favor of the plaintiff Barbara Tobin, who had been injured by merchandise falling from a riser. In doing so, it relied on the testimony of Tobin's expert witness, William Hite, a former Wal-Mart employee. Id. at 948. Hite testified that "overhead risers are used to hold excess stock during peak seasons and that the decision to use these risers is made by the manager at each individual store." Id. (emphasis added).
In this connection, Wal-Mart concedes that it had "a general guideline," pursuant to which "flat items suitable for stacking may be stacked up to 24" high on risers." However, Roger Hughey, manager of the Airport Thruway Wal-Mart store, stated that, in his opinion, VCRs could safely be stacked "five, six, maybe, seven VCRs high" on tops of risers. (Reporter's Transcript, at 273.) The dimensions of the VCR boxes in this case were estimated at 18" × 18" × 7". Thus, the jury could have inferred that the boxes were stacked as high as 49 inches, that is, more than two feet higher than Wal-Mart's "general guideline."
Also, Christie Veach, an assistant manager at the Airport Thruway Wal-Mart store, completed a "Report of Customer Incident," detailing the facts of this accident. The report did not attribute the cause of the accident to the fault of any customer. Moreover, Veach testified that evidence of customer faultif it existed would have been in the report.
These facts compel the conclusion that there was a breach of duty at the Airport Thruway Wal-Mart store. I would hold that Manning met his burden of proving Wal-Mart's culpability. Therefore, I respectfully dissent.
NOTES
[1] We note that evidence that shows merely a high frequency of accidents at a store is insufficient to establish that the store owner had knowledge of a specific dangerous condition at that store. See Cook, 214 Ga.App. at 134, 447 S.E.2d at 37. We further note that, under Alabama law, the rate of accidents at Wal-Mart stores for the entire State of Alabama is irrelevant to the issue of Wal-Mart's liability in this case. See Wal-Mart Stores, Inc. v. Thompson, 726 So.2d 651, 653 (Ala. 1998) ("This figure [167 accidents involving falling merchandise during a 5-year period] represents accidents in Wal-Mart stores across the entire state; this Court has held that on questions of premises liability accidents at other locations are irrelevant.").
[2] A riser, as Manning describes it, is "a flat shelf that is attached to the top of a gondola." Brief of Appellee, at 6. See also Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946, 947 (La. App.) (Wal-Mart "[m]erchandise is stacked on shelves that fit inside a gondola. The gondolas are approximately 5 feet high and extenders (risers) are used to allow greater height when needed."), writ denied, 580 So.2d 923 (La.1991); Wal-Mart Stores, Inc. v. Thompson, 726 So.2d 651, 652 (Ala.1998) (a riser is a "top shelf, where excess merchandise [is] kept").