The majority reverses a judgment entered on a jury verdict in favor of Frazier Manning, who was injured while shopping in the "Airport Thruway Wal-Mart" store in Columbus, Georgia, by merchandise falling from the overhead "riser" on which it had been stacked.[2] The majority concludes that "Manning failed to establish that Wal-Mart had either actual or constructive notice that the boxes containing VCRs were stacked in a dangerous manner." 788 So.2d at 119. I disagree with this conclusion.
Manning claimed that personnel at the Airport Thruway Wal-Mart store negligently or wantonly stacked its merchandise, and that he was injured as a result. Under Georgia law, Wal-Mart could be liable if it knew, or, in the exercise of reasonable care, should have known, that its merchandise was stacked in a "defective manner." Sams v. Wal-Mart Stores, Inc.,228 Ga. App. 314, 315, 491 S.E.2d 517, 518 (1997). I believe Manning presented evidence from which the jury could reasonably infer that management personnel at the Airport Thruway Wal-Mart store knew that its merchandise was routinely being stacked in an improper and dangerous manner.
For example, Manning presented evidence indicating that within two years and three days of the incident in which he was injured, at least 11 other persons shopping in the Airport Thruway
Wal-Mart store had been struck by merchandise falling from risers. This evidence is particularly significant when considered in connection with the evidence that was produced in Ex parteWal-Mart Stores, Inc., 682 So.2d 65 (Ala. 1996) ("Thompson I"), and Wal-Mart Stores, Inc. v. Thompson, 726 So.2d 651 (Ala. 1998) ("Thompson II").
The litigation in Thompson I and Thompson II arose out of an incident in which Elizabeth Thompson was struck in the head by a "footlocker" that fell from an overhead riser while she was shopping at the Wal-Mart store in Thomasville, Alabama. 726 So.2d at 652. In Thompson I, this Court held that Thompson was entitled to "all accident and incident reports from all [86] Wal-Mart stores in Alabama" for the five years preceding her injury. 682 So.2d at 66. As a result of this Court's holding, Thompson discovered that "167 accidents involving falling merchandise had occurred in Wal-Mart stores in Alabama during the five years preceding [her] accident." 726 So.2d at 653. She also discovered that the Thomasville Wal-Mart store had had "two or three reports of falling merchandise before [her] accident."Id. at 654.
Thompson II involved Wal-Mart's appeal from a judgment entered on a jury verdict in favor of Thompson, awarding her "$100,000 in compensatory damages on [her] negligence claims and $175,000 in punitive damages on [her] wantonness *Page 121 
claim." Id. at 652. This Court concluded that the evidence supported the verdict based on negligence, but not based on wantonness. Id. at 656.
In contrast to the evidence presented in Thompson II, the evidence in this case reveals that merchandise falls from risers at the Airport Thruway Wal-Mart store with a startlingly high frequency. The graphic reality of this fact may be illustrated mathematically. Specifically, the average annual rate of riser-merchandise incidents in Alabama from June 1988 to June 1993 was .388 per store [167 state-wide incidents | 86 (the number of Wal-Mart stores in Alabama) = 1.94 | 5 years = .388]. Thus, the average annual incident rate at the Thomasville Wal-Mart store, namely, two or three incidents for the relevant period, was approximately twice the overall statewide average [3 incidents | 5 years = .600 average annual incidents]. At the Airport Thruway Wal-Mart store, however, the average annual incident rate was astartling 5.50 [11 incidents | 2 years = 5.50], more than 14 timesthe average annual state-wide incident rate in Alabama.
In Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946, 951
(La.App.), writ denied, 580 So.2d 923 (La. 1991), the Court of Appeal of Louisiana reversed a trial-court judgment in favor of Wal-Mart and rendered a judgment in favor of the plaintiff Barbara Tobin, who had been injured by merchandise falling from a riser. In doing so, it relied on the testimony of Tobin's expert witness, William Hite, a former Wal-Mart employee. Id. at 948. Hite testified that "overhead risers are used to hold excess stock during peak seasons and that the decision to use these risers ismade by the manager at each individual store." Id. (emphasis added).
In this connection, Wal-Mart concedes that it had "a general guideline," pursuant to which "flat items suitable for stacking may be stacked up to 24" high on risers." However, Roger Hughey, manager of the Airport Thruway Wal-Mart store, stated that, in his opinion, VCRs could safely be stacked "five, six, maybe, seven VCRs high" on tops of risers. (Reporter's Transcript, at 273.) The dimensions of the VCR boxes in this case were estimated at 18" x 18" x 7". Thus, the jury could have inferred that the boxes were stacked as high as 49 inches, that is, more than two feet higher than Wal-Mart's "general guideline."
Also, Christie Veach, an assistant manager at the Airport Thruway Wal-Mart store, completed a "Report of Customer Incident," detailing the facts of this accident. The report did not attribute the cause of the accident to the fault of any customer. Moreover, Veach testified that evidence of customer fault — if it existed — would have been in the report.
These facts compel the conclusion that there was a breach of duty at the Airport Thruway Wal-Mart store. I would hold that Manning met his burden of proving Wal-Mart's culpability. Therefore, I respectfully dissent.
[2] A riser, as Manning describes it, is "a flat shelf that is attached to the top of a gondola." Brief of Appellee, at 6. See also Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946, 947
(La.App.) (Wal-Mart "[m]erchandise is stacked on shelves that fit inside a gondola. The gondolas are approximately 5 feet high and extenders (risers) are used to allow greater height when needed."), writ denied, 580 So.2d 923 (La. 1991); Wal-MartStores, Inc. v. Thompson, 726 So.2d 651, 652 (Ala. 1998) (a riser is a "top shelf, where excess merchandise [is] kept").