NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**18-437**

**LIZA EDMOND**

**VERSUS**

**RONNEY GUILLORY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20170401
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
D. Kent Savoie, Judges.

**AFFIRMED.**

**Katherine Paine Martin**
**Gretchen Heider Mayard**
**John Edward Ortego**
**Martin Mayard, L.L.C.**
**200 Beaullieu Drive, Building 3A**
**P. O. Box 81338**
**Lafayette, LA 70598-1338**
**(337) 291-2440**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
> **State Farm Mutual Automobile Insurance Company**
> **Ronney Guillory**

**Harold D. Register, III**
**102 Versailles Blvd., Suite 620**
**Lafayette, LA 70501**
**(337) 735-4443**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
> **Liza Edmond**

**SAUNDERS, Judge**

The issue presented in this case is the extent to which Plaintiff's damages were caused by the February 4, 2016 automobile accident.

**FACTUAL AND PROCEDURAL HISTORY:**

This is a personal injury lawsuit arising out of a February 4, 2016 automobile accident wherein Plaintiff, Liza Edmond ("Ms. Edmond"), allegedly injured her neck and back when the vehicle being driven by Defendant, Ronnie Guillory ("Guillory"), crossed an intersection without yielding to oncoming traffic and struck her vehicle. Ms. Edmond has a history of multiple prior automobile accidents in which she injured her neck and back, including two or three minor accidents; an accident that occurred in October 2007; another in December 2007; another in August 2014; and a severe accident that occurred in January 2016, less than a month prior to the subject accident.

Prior to trial, the trial court denied Ms. Edmond's Motion in Limine to strike and exclude any and all evidence of prior accidents, injuries, and/or claims in which she had been involved. Also, prior to trial, it was stipulated that Guillory was at fault for the accident.

On March 12, 2018, the trial court found that twenty-five percent of Ms. Edmond's medical treatment resulted from the subject accident and awarded Ms. Edmond $1,972.40 in special damages and $3,000.00 in general damages. It is from this decision that Ms. Edmond appeals, alleging two assignments of error.

**ASSIGNMENTS OF ERROR:**

1. The Trial Court erred when it allowed evidence of prior accidents and prior injuries of Liza Edmond in the trial of the above captioned matter.

2. The Trial Court's award to Liza Edmond of $4,972.40 in damages was abusively low when the injuries suffered by Liza

Edmond as a result of the instant case clearly are more serious than the damages awarded herein.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In her first assignment of error, Ms. Edmond contends that the trial court erred when it allowed evidence of her prior accidents and injuries at trial. We find no merit to this contention.

The trial court has great discretion in its consideration of evidentiary matters such as motions in limine. *Heller v. Nobel Ins. Group*, 2000-261 (La. 2/2/00), 753 So.2d 841; *Furlough v. Union Pacific RR Co.*, 33,658 (La.App. 2 Cir. 8/31/00), 766 So.2d 751, *writ denied*, 2000-2929 (La. 1/12/01), 781 So.2d 556. On review, the appellate court must determine whether the trial court abused its great discretion in ruling on a motion in limine.

As a result of the trial court's denial of Ms. Edmond's Motion in Limine in its entirety, Guillory was able to introduce evidence of her prior accidents and injuries, including the lawsuit filed by Ms. Edmond involving the severe accident that occurred in January 2016, less than a month prior to the subject accident. Ms. Edmond argues that the evidence of her prior accidents and injuries should have been excluded because "[a]lthough relevant . . . it's probative value is substantially outweighed by the danger of unfair prejudice." La.Code Evid. 403. Ms. Edmond contends that the evidence was clearly prejudicial to her as it allowed the trial court to attribute percentages to the damages it awarded to her based on injuries from both the January 9, 2016 accident and the subject accident of February 4, 2016.

Contrary to Ms. Edmond's assertions, Guillory argues that because Ms. Edmond has had multiple injuries to the same parts of her body, which she claims to have injured in the subject accident, including a severe accident less than a month earlier, it was imperative for the trial court to consider her documented medical

history in order to make an informed decision as to whether her complaints changed or worsened as a result of the subject accident and to assess her credibility. In support of this argument, Guillory relies on *Brown v. Diamond Shamrock, Inc.*, 95-1172, p. 19 (La.App. 3 Cir. 3/20/96), 671 So.2d 1049, 1060, which states "[E]vidence of prior injury and claims is admissible insofar as they bear upon any issue before the court, *including credibility*, and to establish whether the disability is causally related to the particular accident."

Following a October 2007 automobile accident Ms. Edmond sought treatment for pain in her neck and right shoulder. She rated her pain as an 8. After the December 2007 automobile accident, Ms. Edmond sought treatment for pain in both legs and pain in her lower back. She also complained of headache pain. X-rays were taken of her neck and low back as well as a CT scan of her head. She rated her pain as an 8 out of 10.

The August 28, 2014 accident involved an incident where Ms. Edmond's vehicle was struck on the driver's side while she was stopped at a red light. The day following that accident, Ms. Edmond sought treatment at Southwest Medical Center. Her chief complaint was severe neck and back pain. Her diagnosis was muscle strain in her neck and back.

The January 9, 2016 accident involved an incident where a tree fell on the hood of Ms. Edmond's vehicle as she was driving. As a result of that incident, Ms. Edmond's vehicle went from traveling 35 or 40 mph to an immediate stop. Her air bags deployed, and her vehicle was totaled. The day following the accident, Ms. Edmond sought treatment at Lafayette General Medical Center. Her chief complaint was pain in the upper part of her neck, and upper and some lower back pain. Her diagnosis was cervical strain and lumbosacral strain. She returned to the emergency

3

room on January 18, 2016, with additional complaints of pain in her hips radiating down her legs.

The subject accident of February 4, 2016 occurred when Ms. Edmond's vehicle was struck by the vehicle being driven by Guillory when he crossed an intersection without yielding to oncoming traffic. That same day, Ms. Edmond sought treatment at Lafayette General Medical Center. Her chief complaint was pain in her lower back and the right side of her neck. Lafayette General's records from this date reflect that the hospital staff observed Ms. Edmond sitting in the bed comfortably, actively on her cell phone, in no acute distress, walking without difficulty, ambulating well, with full range of motion of her neck on exam, no tenderness, normal strength, and a normal exam. She moved her arms and legs without difficulty. She was diagnosed with a cervical and lumbosacral strain, which is the same diagnosis she had after the January 9, 2016 accident.

Ms. Edmond did not receive any additional treatment for over a month, until she reported to Metropolitan Health Group. On her second visit on March 30, 2016, Ms. Edmond rated her pain, which she indicated was primarily in her low back, as a 4. Throughout her remaining treatment with Metropolitan Health Group, Ms. Edmond rated her pain between a 3 and a 6. At no time during her treatment with Metropolitan Health Group did she rate her pain higher than the pain she was experiencing in the weeks following the January 9, 2016 tree accident, leading up to the subject accident. Ms. Edmond was discharged pain free in November 2016 without restrictions.

Ms. Edmond did not seek any additional medical treatment until she was involved in another automobile accident, on June 15, 2017. As a result of that accident Ms. Edmond once again sought medical treatment complaining of neck and back pain.

4

At trial, under direct examination, Ms. Edmond did not disclose any prior accidents or the ongoing problems she was experiencing prior to the subject accident or the impact the prior ongoing problems were having on her life. Instead, she testified:

> Q   And you're saying that after the February 4, 2016 accident that's whenever your neck and back started to hurt?
>
> A   Yes.

By allowing Ms. Edmond to be cross-examined regarding her prior accidents and injuries, the trial court learned that statement was simply not true. The trial court learned that Ms. Edmond had been involved in an accident on January 9, 2016, just three and a half weeks prior to the subject accident in which: (1) her vehicle was totaled; (2) she told the officer at the scene that she was hurt; (3) she injured both the left and right sides of her neck, and her "whole back" hurt; (4) she sought medical treatment the following day, rating her pain as a 7; (5) she returned to the emergency room on January 18, 2016 reporting that she was still in severe pain and had not gotten any better; (6) she could not get out of bed for two or three days following the accident; and (7) she missed work.

When asked how her neck was doing during the three and a half weeks between the accidents, Ms. Edmond initially testified at trial that she would have rated the pain as a 4 or a 5 during that timeframe. However, this rating was not consistent with her prior sworn testimony in her September 2017 deposition at which time she testified that her left sided neck pain would have been rated as an 8 during that timeframe. Ms. Edmond admitted at trial that her upper and low back pain was a "7" between the two accidents, which is inconsistent with the pain rating she gave the emergency room personnel. Ms. Edmond's pre-accident pain did not spontaneously resolve. In fact, when she filed suit in July 2016 for the injuries

5

sustained in the January 2016 tree accident, she was still alleging ongoing neck and back pain. Thus, by Ms. Edmond's own admission, the neck pain from the January 2016 tree accident continued for about a year and a half after that accident.

The trial court also heard evidence that, unlike the January 2016 accident, after the subject accident: (1) Ms. Edmond did not report any injury at the scene; (2) her primary concern was for her vehicle; and (3) she declined the assistance of an ambulance. Later that night, she reported to Lafayette General Medical Center and was asked to rate her pain. At trial, she suggested she would have rated it as a 7 or an 8. However, when provided with the records, she noted that her pain had actually been rated as a 6, lower than it had been in either of the two hospital visits within the month prior to the accident.

The primary issue at trial was whether Ms. Edmond's alleged injuries and treatment were caused by the subject accident or the prior accidents. With respect to the measure of damages, the court learned that: (1) Ms. Edmond did not receive any additional medical treatment for over a month, when she returned to Metropolitan Health Group; (2) throughout her testimony and even in her treatment with Metropolitan Health Group, Ms. Edmond attempted to deny or downplay her prior injuries and complaints and exaggerate her post-accident problems; (3) in the initial questionnaire at Metropolitan Health Group, Ms. Edmond denied being involved in any prior accident; (4) and Dr. Mack's March 7, 2016 report indicating "According to the patient's history, the above symptoms did not exist prior to the subject accident of 2/4/16, and it is my opinion they were caused by the accident," was incorrect due to the inaccurate history provided by Ms. Edmond in which she denied having been involved in any prior accident. Importantly, according to the evidence, Ms. Edmond was never actually seen by Dr. Mack, while treating at

6

Metropolitan Health Group, and she testified that she could not describe what Dr. Mack looked like.

Moreover, at trial Ms. Edmond further testified that she had ongoing problems related to the subject accident. However, the evidence reflects that she was doing well and did not seek any additional medical treatment until she was involved in a subsequent automobile accident on June 15, 2017. At that time, Ms. Edmond once again complained of neck and back pain, never indicating that she had any prior or ongoing problems from either of the 2016 accidents. Thus, Ms. Edmond's inconsistent statements in her medical records, deposition, and testimony regarding the January 2016 tree accident revealed during trial were relevant in the trial court's determination of whether her current complaints were related to the subject accident. In light of Ms. Edmond's ongoing symptomatic complaints for which she was actively treating at the time of the subject accident, the evidence of her prior accidents and injuries was clearly admissible.

After reviewing the record before this court, it is clear that the trial court sought to hear all evidence relevant to Ms. Edmond's claim to determine whether any of the treatment rendered to Ms. Edmond was necessitated by the subject accident or her prior accident(s), including the one less than a month earlier. We find that the evidence is relevant to whether Ms. Edmond sustained any aggravation to her prior injuries due to the subject accident. It is also relevant to a credibility determination. Accordingly, we affirm the trial court's ruling on this issue.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In her second assignment of error, Ms. Emond contends that the trial court's award of $3,000.00 in general damages was abusively low. We find no merit to this contention.

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order to reverse the findings of the trial court:

1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987), *quoting, Arceneaux v. Dominque*, 365 So.2d 1330, 1333 (La. 1979).

In *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La. 1993), *cert denied*, 510 U.S. 1114, 114 S.Ct. 1059, (1994), our supreme court stated as follows concerning the review of general damage awards:

[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.

. . . . The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Id.* at 1260 (citations omitted).

Ms. Edmond argues that the trial court's award of twenty-five percent of her medical expenses and $3,000.00 in general damages is abusively low. "A victim is entitled to compensation for an aggravation of a preexisting condition or injury." *Tobin v. Wal-Mart Stores, Inc.,* 575 So.2d 946, 950 (La.App. 2d Cir.), *writ denied*, 580 So.2d 923 (La.1991). She contends that because Guillory's negligence aggravated a previous condition, he must compensate her for the full extent of the aggravation.

8

Guillory argues that the trial court's award of twenty-five percent of Ms. Edmond's medical expenses and $3,000.00 in general damages is not abusively low when the evidence reflects that: (1) she had been involved in a severe accident 3 ½ weeks prior to the subject accident in which her vehicle was totaled; (2) she complained of the same injuries during the 3 ½ weeks leading up to the subject accident; (3) she had severe enough pain from the prior accident that she sought emergency care and was actively seeking additional care at the time of the subject accident; (4) she rated her pain after the subject accident lower than she rated it before the subject accident; and (5) the only medical testimony relating to Ms. Edmond's complaints to the subject accident was based on an inaccurate assumption that she did not have any symptoms before the accident, by a doctor who never examined her.

Our review of the record reveals Ms. Edmond did not prove any objective worsening as a result of the February 2016 accident. Moreover, the only evidence to support a finding that Ms. Edmond's pain intensified after the subject accident was her own self-serving testimony, which was contradicted by the evidence presented at trial raising serious concern about its veracity and suggesting it should carry very little weight. As such, we find that the trial court's award for the injuries claimed by Ms. Edmond under the circumstances of this case did not constitute an abuse of discretion. Accordingly, we affirm the trial court's award of $3,000.00 in general damages and twenty-five percent of Ms. Edmond's medical expenses.

## CONCLUSION:

On appeal, Ms. Edmond argues that the trial court erred by allowing evidence of her prior accidents and injuries and by rendering an abusively low damages award. Finding no merit to these arguments of error, we affirm the trial court's ruling on these issues.

Costs of these proceedings are assessed to Liza Edmond.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.