721 So.2d 1059 (1998)
Elizabeth B. Leonard wife of and Buddy J. LEONARD
v.
WAL-MART STORES, INC.
No. 97 CA 2154.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
*1060 Brian L. Williams, Baton Rouge, for Plaintiff-Appellee Elizabeth B. Leonard, et al.
Roy C. Beard, Metairie, for Defendant-Appellant Wal-Mart Stores, Inc.
Before FITZSIMMONS and GUIDRY, JJ., and CHIASSON,[1] J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
This is an action for personal injuries sustained by one of the plaintiffs in this matter when a shelf sign fell down upon her as she attempted to retrieve overhead merchandise from the shelves of defendant's store. From a judgment in favor of plaintiff and her husband, defendant now appeals.

FACTS
At the trial of this matter, Elizabeth "Lisa" Leonard (hereafter, "Mrs.Leonard") and her husband, Buddy Leonard (hereafter, "Mr.Leonard"), plaintiffs herein, testified that in the early afternoon of Sunday, November 6, 1994, they visited the Wal-Mart store in nearby New Roads, Louisiana, in preparation for a camping trip which they planned to take later that evening. Upon entering the Wal-Mart store, plaintiffs obtained a shopping cart and proceeded to make their way to the sporting goods department at the rear of the store.
While in the sporting goods department, Mrs. Leonard testified that she noticed a row of blue plastic five-gallon water containers which were displayed on a shelf along the back wall of the store. As the Leonards had previously tried to locate containers such as these for use in hauling water back and forth, Mrs. Leonard pointed the containers out to her husband who was standing to her left, behind the shopping basket.
According to Mrs. Leonard, the containers in question were neatly arranged, and did not extend over the edge of the shelf which was located approximately six feet from the floor. Mrs. Leonard further testified that to her right, about twenty-five to thirty feet away, she observed a Wal-Mart employee leaning against the sporting goods counter, with her arms folded, looking at the back wall of the store. Feeling that it would be "inconvenient" for her to reach overhead and retrieve the containers herself, Mrs. Leonard stated that she looked towards the sales clerk, and motioned for assistance.
Mrs. Leonard testified that the clerk looked at her, but then turned her head the other way as if to ignore Mrs. Leonard's gesture for assistance. At this point, Mrs. Leonard testified that she proceeded to stand on her "tip-toes" and grab the spigot of one of the containers. After successfully retrieving one of the containers and placing it in her shopping cart, Mrs. Leonard testified that she reached up to obtain a second container. In attempting to retrieve another container, Mrs. Leonard stated that a previously unnoticed, metal-framed, plastic shelf sign, together with several other containers, fell from the shelf and struck her on the right side of the face, across the bridge of her nose and under her eye.
According to Mrs. Leonard, the force of the impact "knocked her down"; however, she caught herself as she fell to the floor, thereby breaking her fall. Her husband *1061 helped her up, and at that point, the store clerk came from behind the counter and inquired as to why Mrs. Leonard did not ask for assistance in obtaining the item. The Leonards then placed the second container in their cart, and left the department heading towards the front registers to check out. At the check out register, an employee, whom the Leonards knew, asked Mrs. Leonard about the injury to her face. After explaining to the employee how the injury occurred, the employee led the Leonards back to the sporting goods section and requested that another clerk fill out a report on the incident.
Following the accident, the Leonards returned home, but due to the fact that Mrs. Leonard's face was sore, and she was still very upset, the couple decided not to go camping that evening. As a result of the injuries she sustained in this accident, Mrs. Leonard was forced to undergo extensive medical treatment, particularly with regard to the area of the temporomandibular joint; however, the extent and severity of Mrs. Leonard's injuries are not challenged in this appeal. Mr. Leonard joined in his wife's suit, and sets forth a claim for loss of consortium as a result of the injuries sustained by his wife.
At the conclusion of the trial, the trial judge returned a verdict in favor of Mrs. Leonard, and against defendant, Wal-Mart Stores, Inc., in the total amount of $65,293.03. The trial judge further awarded Mr. Leonard $2,500.00 for his loss of consortium. Wal-Mart then filed a motion to amend the judgment to conform to a stipulation between the parties, as well as a motion for a new trial. The trial court denied Wal-Mart's motion for a new trial, but amended the judgment to conform to the parties' stipulation. The amended judgment awarded Mrs. Leonard $48,200.00 in total damages, and awarded Mr. Leonard $1,800.00 for his loss of consortium. From this judgment, Wal-Mart now appeals.

ISSUES ON APPEAL
As part of its appeal in this matter, Wal-Mart asserts that the trial court erred in the following respects:
1) In finding WalMart liable to the Leonards when the Leonards produced no evidence that there existed a hazardous condition or defect which presented an unreasonable risk of harm; and
2) In failing to find that Mrs. Leonard was contributorily negligent in causing the accident.

LAW
Louisiana Revised Statute 9:2800.6(A) sets forth the duty imposed on a merchant under general negligence law for the protection of those persons lawfully on the merchant's premises. La. R.S. 9:2800.6(A) provides as follows:
A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
These principles require merchants to exercise reasonable care to protect those who enter the store and extend to keeping the premises safe from unreasonable risks of harm and warning persons of known dangers. Retif v. Doe, 93-1104 (La.App. 4th Cir.2/11/94); 632 So.2d 405, 407, writ denied, 94-1000 (La.6/17/94), 638 So.2d 1095. A store owner, however, is not required to ensure against all possibilities of an accident occurring on his premises. Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946, 948-9 (La. App. 2nd Cir.), writ denied, 580 So.2d 923 (La.1991). Nor is he absolutely liable whenever an accident happens. Retif v. Doe, 632 So.2d at 408.
A storeowner must act reasonably in view of the probability of injury to others and owes an affirmative duty to those who use his premises to exercise reasonable care to keep the premises in a safe condition. A customer has a protected interest in expecting the premises to be free of hazardous conditions. Tobin v. Wal-Mart Stores, Inc., 575 So.2d at 949. However, it is the duty of the customer to exercise reasonable care for his own safety and for the safety of those *1062 under his care and control. Retif v. Doe, 93-1104, 632 So.2d at 408.
A plaintiff who is injured by falling merchandise must prove that a premises hazard existed, and may do so by circumstantial evidence. Once the plaintiff proves a prima facie premise hazard, the defendant has the burden to exculpate itself from fault by showing that it used reasonable care to avoid such hazards by means such as periodic cleanup and inspection procedures. Edwards v. K & B Inc., 26,002, p. 8 (La.App. 2nd Cir.8/17/94); 641 So.2d 1040, 1045. A customer who sees a potentially dangerous condition and fails to take reasonable precautions to avoid the danger may be found to have contributed to his own injuries. Brungart v. K Mart Corporation, 95-0708, p. 5 (La.App. 1st Cir.2/23/96); 668 So.2d 1335, 1339, writ denied, 96-0763 (La.5/3/96), 672 So.2d 686.

ANALYSIS
It is appropriate to point out that this case is distinguishable on its facts from most cases concerning the liability of a merchant for falling merchandise, wherein, without any action by the customer, improperly stacked items fall from a shelf and strike the plaintiff. See, for example, Bell v. Bestyet Discount Foods No. 2, 372 So.2d 781 (La.App. 2nd Cir.1979); Tobin v. Wal-Mart Stores, Inc., supra; Edwards v. K & B Inc., supra; Brungart v. K Mart Corporation, supra; and Lopez v. Wal-Mart Stores, Inc., 94-2059 (La.App. 4th Cir.8/13/97); 700 So.2d 215, writ denied, 97-2522 (La.12/19/97); 706 So.2d 457. Under the facts presented by the case at bar, the actions of the plaintiff herself, in reaching for the water containers, caused the metalframed, plastic shelf sign and several water containers to fall.
It is undisputed that the containers were neatly arranged, and did not extend over the base of the shelf which was located along the back wall of the store about six feet from the floor. When the clerk failed to respond to her gesture for assistance, Mrs. Leonard testified that she immediately attempted to retrieve the jugs herself.
According to the deposition testimony of Brad McVea, a Wal-Mart employee, and assistant manager of the New Roads store on the day of Mrs. Leonard's accident[2], signs, advising customers to request assistance in obtaining merchandise displayed on upper shelves, are usually placed along free-standing shelving referred to as "risers". Inexplicably, such signs are not placed along a "high wall" such as the back wall of the store. Mr. McVea further testified that metalframed, plastic shelf signs, such as the one that struck Mrs. Leonard, are designed to hook into holes on a display shelf, and are "supposed to be screwed" onto a display shelf as an extra safety precaution. Mr. McVea conceded that while Wal-Mart employees are taught to secure such signs with a screw or bolt, to his knowledge, the sign in question was not anchored in this manner. According to Mr. McVea, "not many" signs are secured in this manner, despite his subsequent testimony to the effect that it was customary store procedure to stack merchandise behind such signs. It would appear that absent some notice to the effect that customers should seek assistance before retrieving merchandise displayed on upper shelves, a customer might attempt to retrieve such an item on his own. In that event, it is reasonably foreseeable that the presence of an unsecured sign would present an unreasonable risk of harm to the unwary customer below.
Based upon our review of the record in this matter, we cannot say that the trial court erred in its determination that the improperly attached sign and sign holder which ultimately struck Mrs. Leonard constituted a hazardous condition or defect which presented an unreasonable risk of harm. Inasmuch as we fail to find an exculpation of negligence by Wal-Mart, we must conclude that this assignment of error is without merit.
*1063 Turning now to Wal-Mart's second and final assignment of error, i.e., that the trial court erred in failing to find Mrs. Leonard contributorily negligent in causing her own injuries. In support of this assertion, Wal-Mart argues that the most plausible explanation for the fall of the sign is that Mrs. Leonard knocked the sign off of the shelf as she attempted to retrieve merchandise on a shelf not intended for access by customers, and that consequently, she caused her own injuries. We disagree.
While Mr. McVea testified in his deposition that the shelf upon which the water containers were displayed was not intended to be accessible to customers, it is undisputed that there were no signs along the back wall to apprise the customer of this fact. While there is testimony by plaintiffs to the effect that other water containers fell, the trial court found that it was the unsecured sign which caused Mrs. Leonard's injuries. We can find no error in this determination. Despite the fact that Mrs. Leonard did not recall seeing the sign prior to the accident, if the sign had been secured as Wal-Mart's employees are taught to do, the accident would not have occurred. This assignment of error is similarly without merit.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is hereby affirmed. All costs in this matter are assessed against defendant-appellant, Wal-Mart Stores, Inc.
AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] While Wal-Mart comments in brief regarding the introduction of Mr. McVea's pre-trial deposition testimony; however, this issue was not assigned as an error on appeal. Furthermore, we see no error in the trial court's admission of said deposition inasmuch as it was taken for all purposes, and at the time of trial, Mr. McVea resided in Georgia. See, La.Code Civ. P. art. 1450.