GUIDRY, J.
Plaintiffs, Diane Degree and Jerome Degree, appeal from a judgment of the trial court granting summary judgment in favor of defendants, Galliano Truck Plaza and Casino, LLP (Galliano), DBCJK, LLC (DBCJK), DBCJK2, LLC (DBCJK2), and Admiral Insurance Company (Admiral), and dismissing their claims against these defendants with prejudice. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Galliano operates a truck stop casino in Cut Off, Louisiana. On December 6, 2014, Diane Degree was a customer/patron at the casino when an altercation occurred among three other patrons. While moving out of the way of the altercation, the heel of Degree's shoe got caught on a vinyl transition strip between the tile and carpet flooring in the casino, causing her to trip and fall.
Thereafter, Degree and her husband filed a petition for damages, naming Galliano, its members, DBCJK and DBCJK2, Admiral, and the three individuals involved in the altercation at the casino as defendants. Plaintiffs asserted that the presence of an uneven or inconsistent floor or floor *317 surface and inadequate lighting at the casino presented an unreasonably dangerous condition, which caused her to fall and sustain injuries. Additionally, they asserted that the casino was an unsafe environment with insufficient security to restrain, prevent, or control an altercation at the casino prior to her fall.
Galliano, DBCJK, DBCJK2, and Admiral subsequently filed a motion for summary judgment, asserting that plaintiffs cannot meet their burden of establishing that the flooring and lighting at the casino were unreasonably dangerous or that the security was deficient. Particularly, defendants asserted that plaintiffs cannot establish how long the allegedly defective condition was present prior to Degree's fall, that the transition strip constituted a hazardous condition on the date Degree fell, that the transition strip was not open and obvious, and that security at the casino was inadequate.
Following a hearing on defendants' motion, the trial court signed a judgment granting the motion and dismissing plaintiffs' claims with prejudice. Plaintiffs now appeal from the trial court's judgment, asserting that the trial court erred in granting summary judgment in favor of the defendants because genuine issues of material fact exist as to whether the premises were dimly lit on the night of the accident and whether the transition strip presented an unreasonable risk of harm and was open and obvious.
DISCUSSION
Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. M/V Resources LLC v. Louisiana Hardwood Products LLC, 16-0758, p. 8 (La. App. 1st Cir. 7/26/17), 225 So.3d 1104, 1109, writ denied, 17-1748 (La. 12/5/17), 231 So.3d 624. A motion for summary judgment is properly granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050 (per curiam).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. M/V Resources LLC, 16-0758 at p. 9, 225 So.3d at 1109. A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F).
On a motion for summary judgment, the burden of proof is on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
In ruling on a motion for summary judgment, the court's role is not to evaluate the *318 weight of the evidence or to determine the truth of the matter but instead to determine whether there is a genuine issue of triable fact. Clark v. J-H-J Inc., 13-0432, pp. 3-4 (La. App. 1st Cir. 11/1/13), 136 So.3d 815, 817, writ denied, 13-2780 (La. 2/14/14), 132 So.3d 964. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Nash v. Rouse's Enterprises, LLC, 15-1101, p. 3 (La. App. 1st Cir. 2/26/16), 191 So.3d 599, 600-601.
Merchant Liability
Louisiana Revised Statutes 9:2800.6 sets forth the burden of proof for a plaintiff in a claim against a merchant for damages due to a fall on the premises and provides, in pertinent part:
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
A hazardous condition is one that creates an unreasonable risk of harm to customers under the circumstances. Pena v. Delchamps, Inc., 06-0364, p. 4 (La. App. 1st Cir. 3/28/07), 960 So.2d 988, 991, writ denied, 07-0875 (La. 6/22/07), 959 So.2d 498. Merchants are not insurers of their patrons' safety, and a customer is under a duty to use ordinary care to avoid injury. Cusimano v. Wal-Mart Stores, Inc., 04-0248, p. 7 (La. App. 1st Cir. 2/11/05), 906 So.2d 484, 488. A merchant is not absolutely liable every time an accident happens. Leonard v. Wal-Mart Stores, Inc., 97-2154, p. 4 (La. App. 1st Cir. 11/6/98), 721 So.2d 1059, 1061.
In determining whether a condition is unreasonably dangerous, courts have adopted a four-part risk-utility balancing test. This test requires consideration of:
(1) the utility of the complained-of condition;
(2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition;
(3) the cost of preventing the harm; and
(4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature.
Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, pp. 9-10 (La. 2/20/04), 866 So.2d 228, 235. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Reed v. Wal-Mart Stores, Inc., 97-1174, p. 4 (La. 3/4/98), 708 So.2d 362, 365.
The second prong of the risk-utility balancing test focuses on whether the defective condition is obvious and apparent, or as it has come to be commonly known, "open and obvious." Generally, a defendant does not have a duty to protect against an open and obvious hazard.
*319 Broussard v. State ex rel. Office of State Buildings, 12-1238, p. 10 (La. 4/5/13), 113 So.3d 175, 184. In order for a defect to be open and obvious, the danger created by that defect must be apparent to all, i.e., everyone who may potentially encounter it. Broussard, 12-1238 at p. 10, 113 So.3d at 184.
In the instant case, the defendants asserted and the trial court found that the transition strip between the tile and carpet floor on which Degree tripped was open and obvious. In support of their motion, defendants submitted the deposition testimony of Degree, wherein she stated that she had been going to the casino since it opened in 2011 and considered herself a regular. Degree stated that she had never tripped on the transition strip before December 6, 2014. Furthermore, Degree acknowledged that the transition strip ran throughout the whole casino and that she did not see anything wrong with the strip, carpet, or tile floor prior to her fall. Degree also stated that while the lighting was dim inside the casino, she was able to see her feet at the time of her fall.
Defendants also submitted affidavits of Gina Broussard and Krystal Badeaux, employees of Galliano. Broussard stated that she was the general manager of the casino since 2011, and between 2011 and the summer of 2016, the flooring had not been changed. Broussard stated that Degree was the only person who reported tripping and falling at the casino between 2011 and 2016. Badeaux, who was a hostess at the casino, confirmed that Degree was the only person to have fallen at the casino. Badeaux stated that as a hostess, she walks continually throughout the casino and has never stumbled, tripped, or fallen over the transition strip, has never seen any defects or dents in the strip, and no patron or employee has ever complained about the transition strip.
Finally, defendants submitted the affidavit of Fred Vanderbrook, a professional engineer, as well as still photos from the surveillance video on the night of Degree's fall. Vanderbrook stated that he visited the site in 2016. According to Vanderbrook, the transition strip was dark in color and was adjacent to white tile and gold or patterned carpet. Vanderbrook stated that the carpet had no irregularities or seams which may have presented a tripping hazard, and there were no defects in the tile or carpet floor that would present a risk of harm to patrons. According to Vanderbrook, due to the difference in color and composition, the transition strip is open and obvious to anyone who encounters it, and the minimal height and tapered edge on each side did not present a tripping hazard.
In opposing defendants' motion, plaintiffs offered Degree's deposition testimony, wherein she admitted that she had never had problems walking over the transition strip prior to December 6, 2014, and did not know of anyone having any problems traversing that strip prior to her accident. Furthermore, Degree acknowledged that the strip was dark colored.
Additionally, Degree submitted the affidavit and report of Edward Angelloz, Jr. a licensed professional architect, who stated that the rigid vinyl transition strip and non-beveled edge created a tripping hazard. Angelloz also stated that the floor surface configuration was unreasonably dangerous for its particular application in a casino where alcohol was served and attentiveness of patrons is anticipated to be inhibited by alcohol consumption.
From our de novo review of the record, we find that the evidence offered by the defendants establishes that the transition strip in question was open and obvious. The transition strip is solid, dark material *320 and is adjacent to light colored carpet and tile. The area where Degree fell is open, and the stark contrast in color between the transition strip and adjacent flooring is clearly obvious from the photographs. Furthermore, the evidence demonstrates that there had been no other instances of a patron tripping and falling in the casino in the five years that the casino had been in operation other than Degree's, and Degree acknowledged that she was familiar with the area, having frequented the area on a regular basis since its opening, and had not had a problem traversing the area prior to her fall. Plaintiffs failed to produce evidence creating a genuine issue that the transition strip was not open and obvious under the facts present in the instant case, and therefore, the trial court properly granted summary judgment in favor of the defendants as to plaintiffs' claim based on the unreasonably dangerous condition of the transition strip.
Furthermore, we find no error in the trial court's finding that defendants are entitled to summary judgment on plaintiffs' claim that the casino had inadequate lighting. Defendants submitted the affidavit testimony of Vanderbrook, who stated that light readings were measured throughout the casino during both daytime and nighttime hours, and these readings were within range of three to four foot candles minimum. Vanderbrook further stated that the lighting in the casino was adequate for normal movement and exceeded the Life Safety Code requirement of one foot candle applicable to exit areas during day or night conditions.
The only evidence offered by the plaintiffs to rebut that offered by defendants consisted of Degree's subjective and unquantifiable opinion that the lighting was "dim" or "poor." However, the surveillance video from the night in question demonstrates that the area was well lit, and that Degree did not have a problem maneuvering around the casino or seeing and reacting to the events in the casino on the night in question. Accordingly, we find that plaintiffs have failed to present evidence creating a genuine issue that the lighting inside the casino was insufficient, and the trial court properly granted summary judgment in favor of defendants as to this claim.[1]
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to plaintiffs, Diane Degree and Jerome Degree.
AFFIRMED.

We note that plaintiffs have not appealed the trial courts granting of summary judgment as to their claim based on insufficient security. Accordingly, we do not address this issue on appeal.